Of Counsel:
ASHFORD & WRISTON
A Limited Liability Law Partnership LLP

MIRANDA TSAI  8308-0
CONNIE CHOW        8556-0
GARY P. QUIMING    8822-0
Alii Place, Suite 1400
1099 Alakea Street
P.O. Box 131
Honolulu, Hawaii 96810
Telephone:  (808) 539-0400
Email:  mtsai@awlaw.com; cchow@awlaw.com;
        gquiming@awlaw.com

Attorneys for Secured Creditor
 CU HAWAII FEDERAL CREDIT
 UNION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | ) CASE NO. 10-02408 |
| | ) (Chapter 7) |
| HAROLD DOUGLAS PINNOW, SR. | ) |
| AND HAZEL ANN PINNOW, | ) |
| | ) |
| Debtors. | ) |
| | ) |

## STIPULATION AND ORDER MODIFYING
## AUTOMATIC STAY; EXHIBITS "A"- "E"

This Stipulation and Order Modifying Automatic Stay is made with reference

to the facts described below.

856516
U.S. Bankruptcy Court - Hawaii  #10-02408  Dkt # 15  Filed  10/18/10  Page 1 of 43

A.    On August 5, 2010, Debtors HAROLD DOUGLAS PINNOW SR. and HAZEL ANN PINNOW ("Debtors") filed a Petition under Chapter 7 of the Bankruptcy Code commencing this case.

B.    On July 19, 2005, CU Hawaii Federal Credit Union ("CU Hawaii") provided a loan in the amount of $200,000.00 to Debtors.

C.    Attached hereto as Exhibit "A" is a true and correct copy of the Mortgage Note and Construction Loan Allonge Amending Note signed by Debtors (collectively, "Note").

D.    Attached hereto as Exhibit "B" is a true and correct copy of the Mortgage, which secures repayment of the Note, that was recorded with the Office of the Assistant Registrar of the Land Court in the State of Hawaii as Land Court Document No. 3303472 ("First Mortgage"). The First Mortgage encumbers that certain real property located at 11-3766 1st Street, Mauna Loa Estates, Volcano, Hawaii, 96785, also identified as Tax Map Key No. (3) 1-1-007-121 ("Property").

E.    As of August 31, 2010, CU Hawaii's records indicated that the principal balance due to CU Hawaii under the Note was $191,411.90. Interest due as of August 31, 2010 was $6,665.32. Interest is accruing at a rate of $37.23 per diem.

F.    On December 6, 2006, CU Hawaii extended a line of credit in an amount up to $53,600.00 to Debtors pursuant to a Home Equity Line of Credit Agreement and Disclosure Statement dated December 6, 2006 ("Agreement").

856516    U.S. Bankruptcy Court - Hawaii   #10-02408   Dkt # 15   Filed  10/18/10   Page 2 of 43

G.      Attached hereto as Exhibit "C" is a true and correct copy of the Agreement signed by Debtors.

H.      Attached hereto as Exhibit "D" is a true and correct copy of the Hawaii Home Equity Line of Credit Mortgage, which secures repayment of the Agreement, that was recorded with the Office of the Assistant Registrar of the Land Court in the State of Hawaii as Land Court Document No. 3525707 ("Second Mortgage"). The Second Mortgage also encumbers the Property.

I.      As of August 31, 2010, CU Hawaii's records indicated that the principal balance due to CU Hawaii under the Agreement was $53,594.97. Interest due as of August 31, 2010 was $1,632.01. Interest is accruing at a rate of $9.55 per diem.

J.      Attached hereto as Exhibit "E" is Debtors' "Chapter 7 Individual Debtors' Statement of Intention" which states Debtors' intent to surrender the Property to CU Hawaii.

By mutual agreement, and upon order of this Court, CU Hawaii, Debtors and the Trustee stipulate as follows:

1.      That upon approval by the Court, the automatic stay is modified and terminated with respect to the Debtors and that certain real property located at 11-3766 1st Street, Mauna Loa Estates, Volcano, Hawaii, 96785, also identified as Tax Map Key No. (3) 1-1-007-121 ("Property"), to permit CU Hawaii to foreclose and sell the Property and to exercise any and all remedies granted it under its Note, First

3

Mortgage, Agreement and Second Mortgage with respect to the Property described therein.

2.     That, the Debtors having indicated their intent to surrender the Property to CU Hawaii, the order not be stayed pursuant to Rule 4001(a)(3) of the Bankruptcy Rules for a fourteen-day period following entry.

3.     That CU Hawaii may not obtain a deficiency judgment against the Debtors without further order of the Court.

*/s/ Robert J. Faris*
**United States Bankruptcy Judge**
Dated: October 18, 2010

STIPULATED AND SO AGREED
AS TO THE ABOVE:

BARBARA L. FRANKLIN, ESQ.
Attorney for Debtors

MIRANDA TSAI, ESQ.
Attorney for CU HAWAII FEDERAL
CREDIT UNION

/s/ David Farmer
DAVID FARMER
Trustee

In re HAROLD DOUGLAS PINNOW SR. and HAZEL ANN PINNOW; Case No. 10-02408 (Chapter 7); U.S. Bankruptcy Court, D. Haw., *Stipulation and Order Modifying Automatic Stay*

4

856516

MEMBER NO. ████████

LOAN NO. ████████143

TMK: (3) 1-1-007-121

# MORTGAGE NOTE

$    200,000.00                              July 19, 2005
Maximum Loan Limit                              Date

**1.    BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay the sum of TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00) (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is CU HAWAII FEDERAL CREDIT UNION, Charter No. 24630, a federal credit union organized and existing under the Federal Credit Union Act (12 U.S. C. 1751 et seq.).  I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

**2.    INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.750%.  The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**
    (A)    **Time and Place of Payments**
    I will pay principal and interest by making payments every month.  I will make my monthly payments on the first (1st) day of each month beginning on ═══════════ ═══════════.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal.  If, on ═══════════ ═══════════, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".  I will make my monthly payments at 476 Hinano Street, Hilo, Hawaii 96720 or at a different place if required by the Note Holder.

    (B)    **Amount of Monthly Payments**
    My monthly payment will be in the amount of $═══════════.

**4.    BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment".  When I make a prepayment, I will tell the Note Holder in writing that I am doing so.  I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.    LOAN CHARGES**

EXHIBIT "A"

with this loan exceed the permitted limits, then: (i) any such loan charge is finally the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6.   BORROWER'S FAILURE TO PAY AS REQUIRED

**(A)     Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)     Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)     Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D)     No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)     Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

### 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the my last known address. Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Paragraph 3(A) above or at a different address if I am given a notice of that different address.

### 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person

- 2 -

individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

*Transfer of the Property or a Beneficial Interest in Borrower.* If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The Notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

IN WITNESS WHEREOF the Borrower has signed this instrument on the day and year first above written.

_____
HAROLD DOUGLAS PINNOW, SR.

_____
HAZEL ANN PINNOW

BORROWER

- 3 -

U.S. Bankruptcy Court - Hawaii   #10-02408   Dkt # 15   Filed  10/18/10   Page 7 of 43

# CONSTRUCTION LOAN ALLONGE AMENDING NOTE

THIS CONSTRUCTION LOAN ALLONGE is an AMENDMENT made this __19th__ day of __July, 2005_____, and is incorporated into and shall be deemed to amend and supplement the promissory note ("Note") of the same date given by the undersigned ("Borrower") to evidence Borrower's indebtedness to **CU HAWAII FEDERAL CREDIT UNION,** Charter No. 24630, a federal credit union organized and existing under the Federal Credit Union Act (12 U.S. C. 1751 et seq.) ("Lender"), which indebtedness is secured by a Mortgage ("Security Instrument"), of the same date and covering the property described in the Security Instrument located at 11-3766 1st Street, Mauna Loa Estates, Volcano, Hawaii 96785.

1.      Notwithstanding anything to the contrary set forth in the Note, Borrower hereby agrees that Paragraph 2of the Note is hereby amended in its entirety to read as follows:

"2.      **INTEREST.** Interest will be charged on unpaid principal or on as much of the principal as may have been advanced by the Lender, until the full amount of principal has been paid.

Initially, I will pay interest at a yearly rate of 6.750%.

I will pay interest at the rate described above for a period which shall commence on __August 31, 2005_____, and shall end on the later of the first day of the month  following the Construction Completion Date or the forty-eighth (48th) day following the Date of Filing of the Notice of Completion. The term "Construction Completion Date" shall mean __April 30, 2006_____; provided, however, that the Construction Completion Date may be extended upon Borrower's written request and subject to the Lender's sole discretion, all in accordance with the Construction Loan Agreement. The "Date of Filing the Notice of Completion" means the date when substantial completion of the improvements has occurred  (which improvements I am constructing with the proceeds of this loan and which are described in the Construction Loan Agreement signed by me and the Lender) and an effective notice of completion for said improvements has been published and filed with the Circuit Court of the Third Circuit, State of Hawaii in compliance with Hawaii Revised Statutes, Section 507-43.

Commencing on the later of the first day of the month following the Construction Completion Date or the forth-eighth (48th) day following the Date of Filing of the Notice of Completion, which day is referred to in this Note as the "Conversion Date", I will pay interest at a fixed rate equal to the then prevailing interest rate based on the 6-month United States Treasury Bill plus 3.000% ("new fixed interest rate"). Interest will be computed on the basis of a 365-day year.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note."

2.      Notwithstanding anything to the contrary set forth in the Note, Borrower hereby agrees that Paragraph 3of the Note is hereby amended in its entirety to read as follows:

"3.      **PAYMENTS**
(A)      **Time and Place of Payments**
I will make payments required by this Note every month.
I will make my monthly payments on the last day of each month beginning on _____ __August 31, 2005_____, and continuing until the

Conversion Date. Commencing on the Conversion Date, I will make my monthly payments on the first day of each month following the Conversion Date and on the same day of each month thereafter. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on _____ N/A _____, and in no case later than the thirtieth (30th) anniversary date of the Conversion Date, I will owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".

I will make my monthly payments at 476 Hinano Street, Hilo, Hawaii 96720 or at a different place if required by the Note Holder.

(B)    Amount of Monthly Payments to be Made for the Period up to and including the Conversation Date

For the period up to and including the Conversion Date, the amount of each of my monthly payments will be equal to the amount of interest which has accrued on unpaid principal during the preceding month, or on as much of the principal as may have been advanced by the Lender.

(C)    Amount of Monthly Payments to be Made after the Conversion Date

Commencing on the first day of the month following the Conversion Date and on the same day of each month thereafter until the maturity date, the amount of each of my monthly payments will be equal to the amount of principal and interest sufficient to repay the principal balance of the loan as of the Conversion Date on the maturity date at my new fixed interest rate in substantially equal payments. This amount will be determined by the Lender. I agree to sign and give the Lender any documents related to the interest rate and payment changes which the Lender may ask me to sign. I also understand that the signing of additional documents by me is not required for either the new fixed interest rate, adjustable interest rate or the monthly payment schedule to become effective.

(D)    Notice of the Interest Rate and Payment Changes

The Lender will deliver or mail to me a notice advising me of my new fixed interest rate or new adjustable interest rate and monthly payment amount. The notice will be delivered or mailed by the Lender before the date when my monthly payment in the new amount is due."

3.    Notwithstanding anything to contrary set forth in the Note, including Section 4 of the Note, if it is a fixed interest rate note, or Section 6 of the Note if it is an adjustable interest rate note, in the event that Borrower shall make a partial prepayment under the Note, Borrower's monthly interest-only payment will be reduced, as determined by Lender, to reflect a decrease in the amount of interest accruing on the unpaid principal balance.

4.    During the period that this Allonge shall be in effect, this Allonge shall supersede the provisions of the Note, and in the event of any conflict, the terms of this Allonge shall control; provided, however, that Section 3 of this Allonge shall be void and of no effect during such periods as the Note is held in whole or in part by either the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association; provided, further, that in the event that at any time subsequent thereto, neither the Federal Home Loan Mortgage Corporation nor the Federal National Mortgage Association shall hold any interest in this Note,

- 2 -

U.S. Bankruptcy Court - Hawaii  #10-02408  Dkt # 15  Filed 10/18/10  Page 9 of 43

Lender reserves the right to declare this Allonge in full force and effect. Notice of such declaration(s) shall be given to the Borrower in writing through the United States mail, addressed to Borrower at Borrower's address last known to Lender, registered mail, return receipt requested, and shall be effective upon the mailing of such notice to the Borrower.

     5.     If more than one person has signed the Note and this Allonge, each person is jointly and severally liable for all of the obligations under the note as modified by this Allonge and therefore, each person is fully and personally obligated to fulfill all of the promises made in the Note and this Allonge, including, without limitation, payment of the entire amount owed.

     BY SIGNING BELOW, Borrower has executed this Allonge contemporaneously with the Note, and accepts and agrees to the terms and covenants contained in this Allonge.


_____
HAROLD DOUGLAS PINNOW, SR.


_____
HAZEL ANN PINNOW

                                          BORROWER

- 3 -



L-538  
**STATE OF HAWAII**  
OFFICE OF ASSISTANT REGISTRAR  
RECORDED  
JUL 26, 2005          08:01 AM  

Doc No(s) 3303472  
on Cert(s) 761,584  

/s/ CARL T. WATANABE  
ASSISTANT REGISTRAR

20    3/3    Z4

(3)
(FAM)

1431533

---

LAND COURT SYSTEM          REGULAR SYSTEM

AFTER RECORDATION, RETURN BY: MAIL ( ) PICK UP ( )

**CU Hawaii FCU**  
**476 Hinano St.**  
**Hilo, HI 96720**

This document contains 13 pages

---

TITLE OF DOCUMENT:  
  MORTGAGE

---

PARTIES TO DOCUMENT:

MORTGAGOR:      HAROLD DOUGLAS PINNOW, SR. and HAZEL ANN PIN-NOW, husband and wife, whose address is 16-2066 Pahoa Road, Pahoa, Hawaii 96778

MORTGAGEE:      CU HAWAII FEDERAL CREDIT UNION, whose address is 476 Hinano Street, Hilo, Hawaii 96720

---

PROPERTY DESCRIPTION:                    LIBER/PAGE:  
Lot 133, area 20,000 square feet,  
Map 12, Keaau, Puna, Hawaii          DOCUMENT NO.:  
                                     TRANSFER CERTIFICATE OF  
                                     TITLE NO.:

---

AFFECTS TMK: (3) 1-1-007-121

**EXHIBIT "B"**

# MORTGAGE

THIS INDENTURE, made this ___19th___ day of ___July___, ___2005___, between HAROLD DOUGLAS PINNOW, SR. and HAZEL ANN PIN-NOW, husband and wife, whose address is 16-2066 Pahoa Road, Pahoa, Hawaii 96778, hereinafter called the "MORTGAGOR", and CU HAWAII FEDERAL CREDIT UNION, Charter No. 24630, a federal credit union organized and existing under the Federal Credit Union Act (12 U.S. C. 1751 et seq.), whose address is 476 Hinano Street, Hilo, Hawaii 96720, hereinafter called the "MORTGAGEE",

WITNESSETH THAT:

The Mortgagor, for valuable consideration advanced by said Mortgagee, the receipt whereof is hereby acknowledged, and in order to secure the repayment as to any and all loans and advances made or to be made by the Mortgagee, does hereby grant, bargain, sell, assign and convey unto the Mortgagee all of the property described in Exhibit "A", attached hereto and by reference incorporated herein.

This Mortgage is in consideration of a maximum loan of TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00), plus interest at SIX AND THREE-FOURTHS percent (6.75%) per annum. This mortgage is to be Mortgagee's security for the present loan and all further loans and advances made to Mortgagor by the Mortgagee.

AND the reversions, remainders, rents, issues and profits thereof, and all of the estate, right, title and interest of the Mortgagor both at law and in equity, therein and thereto;

TO HAVE AND TO HOLD the same with all improvements now or hereafter being thereon, and all rights, easements, privileges and appurte-nances thereunto belonging, and the rents, issues and profits thereof, unto the Mortgagee, as tenant in severalty, forever.

I.   PAYMENT OF PRINCIPAL AND INTEREST.

PROVIDED, HOWEVER, that if the Mortgagor shall pay to the Mortgagee the amount stated above, plus interest thereon, according to that certain mortgage note in that amount bearing even date herewith and secured

- 2 -

hereby and payable to the order of the Mortgagee in the manner set forth in said mortgage note, the terms of which said note are incorporated herein by reference and according to the tenor of any renewals thereof, net over and above all taxes levied and assessed upon or in respect of the debt and interest, and shall discharge any and all obligations that now are or hereafter may be or become owing directly or contingently by the Mortgagor to the Mortgagee on any and every account whether or not the same are mature, of which obligations the books of the Mortgagee shall be prima facie evidence and which obligations it is agreed by these presents are and shall be secured as an additional charge against all the property hereby mortgaged, shall observe and perform all the covenants and agreements herein contained, THEN THIS MORTGAGE AND THE MORTGAGE NOTE SHALL BE DEEMED SATISFIED AND VOID.

## II. DEFAULT OPTIONS AVAILABLE.

BUT UPON ANY DEFAULT in the performance or observance of any covenant or condition herein or in any mortgage note contained or of the terms of any other indebtedness hereby secured for a period of at least thirty (30) days, or if the Mortgagor is adjudicated a bankrupt, the whole amount of all indebtedness owing by or chargeable to the Mortgagor under any provision of this mortgage, or intended to be secured hereby, on any and every account shall at the option of the Mortgagee, and upon ten days written notice, become immediately due and payable, and with or without foreclosure, the Mortgagee shall have the immediate right to receive and collect all rents, income and profits from the property hereby mortgaged due or accrued or to become due, and said rents and profits are hereby assigned to the Mortgagee and said Mortgagee is hereby irrevocably appointed the attorney in fact of the Mortgagor in the name of the Mortgagor or in their own name to demand, sue for, collect, recover and receive all such rents and profits, to compromise and settle claims for rents or profits upon such terms and conditions as to them may seem proper; to enter into, renew or terminate leases or tenancies, and the Mortgagee may foreclose this mortgage, or as provided by law by entry and possession, or (with or without entry and possession) may sell the said property or any part thereof, either as a whole or in parcels, together with all improvements thereon at public auction, and may in their own name or as the attorney in fact of the Mortgagor, for such purposes hereby irrevocably appointed, effectually convey the property so sold to the purchaser or purchasers absolutely and forever; and any foreclosure shall forever bar the Mortgagor and all persons claiming under the Mortgagor from all right, title and interest in such property at law and in equity; and out of the proceeds of any foreclosure sale the Mortgagee may deduct all costs and expenses of sale, foreclosure and/or suit including reasonable attorney's fees; may pay and

· 3 ·

discharge any prior lien on said property and/or advances made by the Mortgagee for the benefit or protection thereof or connected with this mortgage and retain or be awarded all sums then payable by or chargeable to the Mortgagor on every account, rendering to the Mortgagor the surplus, if any. If such proceeds shall be insufficient to discharge the same in full, the Mortgagee may have any other legal recourse against the Mortgagor for the deficiency. The Mortgagee may be the Purchaser at any foreclosure sale.

### III. REMEDIES CUMULATIVE.

THE Mortgagee shall have the right to enforce one or more remedies hereunder or any other remedy at law or equity they may have, successively or concurrently or independently.

### IV. APPLICATION OF PAYMENTS.

THE Mortgagee shall have the right and is hereby expressly authorized to make application of any payments made to them, and of any rents, income and profits collected by them upon the obligations and liabilities of the Mortgagor to the Mortgagee, or to their respective successors and assigns.

### V. PAYMENTS AND ADVANCES.

AND the Mortgagor hereby covenants with the Mortgagee, as follows:

THAT the Mortgagor shall pay and discharge the obligations secured hereby and all taxes, rates, assessments, rents, impositions, duties and charges of every kind and nature, which are now or may hereafter be levied or assessed or become or threaten to become a charge or lien upon or against or relate to said mortgaged property or the debt and interest, the payment of which is secured by this instrument; and that in default of any such payment or upon failure to observe or perform any covenant or condition of this Mortgage, or with or without default, in the event of litigation, actions or claims affecting the security, the Mortgagee may make any advances and incur attorney's fees that to them may deem proper or necessary to protect such property and/or this mortgage and the rights of the Mortgagee hereunder and recover any such advances made and all expenses, including attorney's fees, paid or incurred by them, upon demand, together with interest thereon to the date of payment, and the same shall be secured hereby.

· 4 ·

## VI. MAINTENANCE OF PROPERTY.

THAT the Mortgagor shall keep the mortgaged property, including any improvements thereon, if any, in good condition and repair, shall comply with all laws and governmental rules and regulations applicable thereto, and shall not commit or suffer any strip or waste, and that the Mortgagee may enter and inspect the premises, upon reasonable notice to Mortgagor, and make any repairs which they deem proper and the cost thereof shall constitute an advance under the preceding paragraph hereof.

## VII. INSURANCE.

THAT if any improvements are now or hereinafter located on the subject premises, the Mortgagor shall keep the buildings and improvements on said land insured against loss, destruction and/or damage by fire and any hazard, other than extraordinary hazards such as tsunami and earthquake hazards, casualty and contingency, and which the Mortgagee may require from time to time during the existence of this mortgage, in an amount equal to the full insurable value of said buildings and improvements, in such manner and form and in such insurance companies as the Mortgagee shall approve, and shall pay the premiums therefor and deposit the policy or policies therefor with the Mortgagee. All losses and moneys payable under such insurance shall be payable to the Mortgagee and shall be applied by the Mortgagee, first, to restoration or repair of the property damaged, provided such restoration or repair is economically feasible and the security of this Mortgage is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this Mortgage would be impaired, the insurance proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Mortgagor. If the property is abandoned by Mortgagor, or if Mortgagor fails to respond to Mortgagee within thirty (30) days from the date notice is mailed by Mortgagee to Mortgagor that the insurance carrier offers to settle a claim for insurance benefits, Mortgagee is authorized to collect and apply the insurance proceeds at Mortgagee's option either to restoration or repair of the property or to the sums secured by this Mortgage.

Unless Mortgagee and Mortgagor otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to above or change the amount of such installments. If under the paragraph entitled Acceleration; Remedies, below, the property is acquired by Mortgagee, all right, title and interest of Mortgagor in and to any insurance policies and in and to the proceeds thereof resulting from damage to the property prior to the sale or acquisition shall pass to Mortgagee to the extent of the sums secured by this Mortgage

- 5 -

immediately prior to such sale or acquisition.

The Mortgagor is free to procure the insurance policy required in this mortgage from any insurance company authorized to do business in the State of Hawaii.

VIII.  CONDEMNATION.

THAT in the event the mortgaged property or any part thereof is condemned, the Mortgagee may, at his option, appear and defend any such suit and is hereby irrevocably authorized to collect all the proceeds, and apply the same upon any obligation secured hereby and all costs, expenses and attorney's fees paid or incurred by them shall constitute an advance hereunder.

IX.  LIENS.

THAT the Mortgagor shall keep the mortgaged property free of all other liens that may be superior to the lien of this mortgage, except upon the prior written consent of the Mortgagee.

X.  WARRANTY.

THAT the Mortgagor has good right to grant and convey the same unto the Mortgagee as aforesaid, and will WARRANT and DEFEND the same unto the Mortgagee, forever, against the claims and demands of all persons.

XI.  ASSIGNMENT OR TRANSFER OF INTEREST IN THE PROPERTY.

Mortgagor understands that if Mortgagor sells or transfers all or part of the property or any rights in the property, the entire principal balance and accrued interest then owing on this Mortgage shall become immediately due and payable.  Therefore, Mortgagor understands that Mortgagor cannot transfer any interest in the property unless the entire balance due is paid in full.

XII.  ACCELERATION; REMEDIES.

Upon Mortgagor's breach of any covenant or agreement of Mortgagor in this Mortgage for a period of at least thirty (30) days, including the covenants to pay when due any sums secured by this Mortgage, Mortgagee, prior to acceleration, shall mail notice to Mortgagor as provided above

- 6 -

specifying: (l) the breach; (2) the action required to cure such breach; (3) a date, not less than thirty (30) days from the date the notice is mailed to Mortgagor, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the property. The notice shall further inform Mortgagor of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Mortgagor to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Mortgagee at Mortgagee's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Mortgagee shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph, including, but not limited to, reasonable attorney's fees.

If Mortgagee invokes the power of sale, Mortgagee shall mail Mortgagor a notice of sale in the manner provided above. Mortgagee shall publish a notice of sale and shall sell the property at the time and place and under the terms specified in the notice of sale. Mortgagee or Mortgagee's designee may purchase the property at any sale. The proceeds of any sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorney's fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

## XIII. ADDITIONAL IMPROVEMENTS.

Mortgagor may, without the prior written consent of the Mortgagee, build any new or additional building or structure on the mortgaged premises or, if applicable, rebuild or add to any building or structure that may now be located on the premises.

## XIV. CONSENT.

Whenever the written consent of the Mortgagee is required by this instrument, such consent shall not be unreasonably withheld.

## XV. PREPAYMENT.

Unless otherwise stated in the mortgage note, Mortgagor may at any time prepay, without the payment of any premium or penalty, the whole or any part of the principal indebtedness secured by this mortgage, with

- 7 -

U.S. Bankruptcy Court - Hawaii  #10-02408   Dkt # 15   Filed 10/18/10   Page 17 of 43

accrued interest.

## XVI. BORROWER NOT RELEASED.

Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Mortgagee to any successor in interest of Mortgagor shall not operate to release, in any manner, the liability of the original Mortgagor and Mortgagor's successors in interest. Mortgagee shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Mortgagor and Mortgagor's successors in interest.

## XVII. FORBEARANCE BY LENDER NOT A WAIVER.

Any forbearance by Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Mortgagee shall not be a waiver of Mortgagee's right to accelerate the maturity of the indebtedness secured by this Mortgage.

## XVIII. SUCCESSORS AND ASSIGNS, BOUND; JOINT AND SEVERAL LIABILITY; CAPTIONS.

The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Mortgagee and Mortgagor.

On full payment of the obligation secured by this mortgage, Mortgagee shall surrender this mortgage and the mortgage note or any other evidence of the obligation to Mortgagor or such other person as is entitled thereto, and shall promptly execute a release without cost to Mortgagor stating that the mortgage has been paid, satisfied, or discharged, and shall either mail or deliver such satisfaction to Mortgagor or his agent for the purpose of recording. Mortgagor shall pay all costs of recordation, if any.

THAT the term "Mortgagee" as and when used herein shall include the Mortgagee, and the Mortgagee's heirs, executors, administrators, successors and assigns and that the term "Mortgagor" as and when used herein shall include the Mortgagor, and the Mortgagor's heirs, executors, administrators, successors and assigns; that all covenants and agreements on the part of the Mortgagor to be observed and performed shall be joint and

- 8 -

several if entered into by more than one; that the singular shall include the plural and vice versa; and the use of any gender shall include all genders. The captions and headings herein are used for convenience only and are not to be used for the purpose of defining or interpreting the provisions hereof.

IN WITNESS WHEREOF, the Mortgagor has caused these presents to be executed on the day and year first above written.

_____
HAROLD DOUGLAS PINNOW, SR.

_____
HAZEL ANN PINNOW

                                MORTGAGOR

STATE OF HAWAII      )
                     ) SS:
COUNTY OF HAWAII     )

On this __19th__ day of ___July___, __2005__, before me personally appeared HAROLD DOUGLAS PINNOW, SR. and HAZEL ANN PINNOW, to me known to be the persons described in and who executed the foregoing instrument and acknowledged that they executed the same as their free act and deed.



_____
Notary Public, State of Hawaii
Print Name: __Desiree T. Medeiros__
My commission expires: __06-14-2008__

Prepared by
STUART H. ODA
Attorney at Law

· 9 ·

## EXHIBIT A

ALL of that certain parcel of land situate at Keaau, District of Puna, Island and County of Hawaii, State of Hawaii, described as follows:

LOT 133, area 20,000 square feet, more or less, as shown on Map 12, filed with Land Court Application No. 1053 (amended) of W. H. Shipman, Limited.

TOGETHER WITH an easement of way in common with others entitled thereto across all streets, road and avenues as shown on Map 12 of said Application.

SUBJECT, HOWEVER, to the Order filed in the Third Circuit Court, State of Hawaii, with Civil No. 94-118, re: obligation of all lot owners of the Mauna Loa Estates Subdivision to pay road maintenance assessments. A certified copy of said Order was recorded February 28, 1995 as Land Court Document No. 2221350 of Official Records.

BEING the same premises described in Transfer Certificate of Title No. 761,584 .

U.S. Bankruptcy Court - Hawaii  #10-02408  Dkt # 15  Filed 10/18/10  Page 20 of 43

# CONSTRUCTION LOAN RIDER

THIS CONSTRUCTION LOAN RIDER is made this ___19th___ day of ___July, 2005___, and is incorporated into and shall be deemed to amend and supplement the Mortgage ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note as amended by the Construction Allonge Amending Note, if any (hereinafter together referred to as the "Note") to **CU HAWAII FEDERAL CREDIT UNION**, Charter No. 24630, a federal credit union organized and existing under the Federal Credit Union Act (12 U.S. C. 1751 et seq.) ("Lender"), of the same date and covering the property described in the Security Instrument located at 11-3766 1st Street, Mauna Loa Estates, Volcano, Hawaii 96785.

A.    **ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1.    Notwithstanding anything to the contrary set forth in the Note, Borrower hereby agrees that Paragraph 2 of the Note is hereby amended in its entirety to read as follows:

"2.    **INTEREST**.  Interest will be charged on unpaid principal or on as much of the principal as may have been advanced by the Lender, until the full amount of principal has been paid.

Initially, I will pay interest at a yearly rate of 6.750%.

I will pay interest at the rate described above for a period which shall commence on ___August 31, 2005___, and shall end on the later of the first day of the month following the Construction Completion Date or the forty-eighth (48th) day following the Date of Filing of the Notice of Completion. The term "Construction Completion Date" shall mean ___April 30, 2006___; provided, however, that the Construction Completion Date may be extended upon Borrower's written request and subject to the Lender's sole discretion, all in accordance with the Construction Loan Agreement. The "Date of Filing the Notice of Completion" means the date when substantial completion of the improvements has occurred  (which improvements I am constructing with the proceeds of this loan and which are described in the Construction Loan Agreement signed by me and the Lender) and an effective notice of completion for said improvements has been published and filed with the Circuit Court of the Third Circuit, State of Hawaii in compliance with Hawaii Revised Statutes, Section 507-43.

Commencing on the later of the first day of the month following the Construction Completion Date or the forth-eighth (48th) day following the Date of Filing of the Notice of Completion, which day is referred to in this Note as the "Conversion Date", I will pay interest at a fixed rate equal to the then prevailing interest rate based on the 6-month United States Treasury Bill plus 3.000% ("new fixed interest rate").  Interest will be computed on the basis of a 365-day year.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note."

2.    Notwithstanding anything to the contrary set forth in the Note, Borrower hereby agrees that Paragraph 3 of the Note is hereby amended in its entirety to read as follows:

"3.    **PAYMENTS**

    (A)    **Time and Place of Payments**

    I will make payments required by this Note every month.

    I will make my monthly payments on the last day of each month beginning on _____August 31, 2005_____, and continuing until the Conversion Date. Commencing on the Conversion Date, I will make my monthly payments on the first day of each month following the Conversion Date and on the same day of each month thereafter. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on _____N/A_____, and in no case later than the thirtieth (30th) anniversary date of the Conversion Date, I will owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".

    I will make my monthly payments at 476 Hinano Street, Hilo, Hawaii 96720 or at a different place if required by the Note Holder.

    (B)    **Amount of Monthly Payments to be Made for the Period up to and including the Conversion Date**

    For the period up to and including the Conversion Date, the amount of each of my monthly payments will be equal to the amount of interest which has accrued on unpaid principal during the preceding month, or on as much of the principal as may have been advanced by the Lender.

    (C)    **Amount of Monthly Payments to be Made after the Conversion Date**

    Commencing on the first day of the month following the Conversion Date and on the same day of each month thereafter until the maturity date, the amount of each of my monthly payments will be equal to the amount of principal and interest sufficient to repay the principal balance of the loan as of the Conversion Date on the maturity date at my new fixed interest rate in substantially equal payments. This amount will be determined by the Lender. I agree to sign and give the Lender any documents related to the interest rate and payment changes which the Lender may ask me to sign. I also understand that the signing of additional documents by me is not required for either the new fixed interest rate, adjustable interest rate or the monthly payment schedule to become effective.

    (D)    **Notice of the Interest Rate and Payment Changes**

    The Lender will deliver or mail to me a notice advising me of my new fixed interest rate or new adjustable interest rate and monthly payment amount. The notice will be delivered or mailed by the Lender before the date when my monthly payment in the new amount is due."

    3.    Notwithstanding anything to contrary set forth in the Note, including Section 4 of the Note, if it is a fixed interest rate note, or Section 6 of the Note if it is an adjustable interest rate note, in the event that Borrower shall make a partial prepayment under the Note, Borrower's monthly interest-only payment will be reduced, as determined by Lender, to reflect a decrease in the amount of interest accruing on the unpaid principal balance.

    4.    A new paragraph is added to the Mortgage to read as follows:

- 2 -

"25.    **CONSTRUCTION LOAN.**  It is agreed that the moneys advanced under this Mortgage are to be used in whole or in part for the improvement of the Property. The Lender is under a contractual obligation to make future advances to the Borrower in the aggregate principal sum of U.S. $200,000.00, subject to the terms and conditions of a Construction Loan Agreement of even date herewith, as amended from time to time, the repayment of which sum, together with other obligations, is secured by this Mortgage.
     The Borrower agrees to fully and faithfully observe and perform all of their covenants and agreements contained in said Construction Loan Agreement, as amended from time to time.  Any failure on the Borrower's part to do so will be a default under this Mortgage and the Lender will be entitled to accelerate the indebtedness to enforce all remedies."

     5.    Notwithstanding anything to the contrary set forth in the Note, the Note shall be subject to
the terms of the construction Loan Agreement.

     B.    **TERMINATION OF THIS RIDER.**  Sections 3 and 5 of this Rider shall be void and of no effect during such periods as the Security Instrument is held in whole or in part by either the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association; provided, however, that in the event that at any time subsequent thereto neither the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association shall hold any interest in the Security Instrument, Lender reserves the right to declare this Rider in full force and effect.  Notice of such declaration(s) shall be given to the Borrower in writing through United States mail, addressed to Borrower at Borrower's address last known to Lender registered mail, return receipt requested, and shall be effective upon the mailing of such notice to the Borrower.

     BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Construction Loan Rider.


_____
HAROLD DOUGLAS PINNOW, SR.


_____
HAZEL ANN PINNOW

                              BORROWER


- 3 -

U.S. Bankruptcy Court - Hawaii  #10-02408   Dkt # 15   Filed  10/18/10   Page 23 of 43



**CU Hawaii**
FEDERAL CREDIT UNION

Date: December 06, 2006
Borrower: Hazel Pinnow & Harold Pinnow, Sr.
Loan #: ⬛⬛⬛⬛⬛⬛/147
Property Address: Lot 133, First Street , Volcano, HI 96785

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT
### (Credit Union - Hawaii)

This Agreement (the "Agreement") governs your Home Equity Line of Credit Plan ("Plan") with CU Hawaii Federal Credit Union (the "Lender"). Read this Agreement carefully so that you know how your Plan works. As you read this Agreement remember that the terms "we," "us," "the Credit Union," and "our" refer to the Lender, and "you," "your," and "yours" refer to each person who signs this Agreement or has authority to use the Plan.

**WHAT IS YOUR HOME EQUITY LINE OF CREDIT?** It is a credit arrangement in which we make loans to you by advancing funds ("Advances") from your Plan at your direction, allowing you to repay such Advances and take additional Advances. You promise and agree to repay these Advances, any interest that accrues on them, and all other charges for which you are responsible under the terms of this Agreement.

**SECURITY INTEREST.** To establish a Plan, you are granting us a home equity line of credit mortgage, deed of trust or security deed (the "Security Instrument") on your real property, which is further described in the Security Instrument, and which is located at Lot 133, First Street, Volcano, HI 96785 (the "Property"). All of the terms and conditions of the Security Instrument are very important and should be read carefully.

**OBTAINING ADVANCES.** You may use your Plan when you receive notice from us that your Plan has been established. You may request Advances from your Plan by writing a Home Equity Line of Credit Check ("Check") for the exact amount that you desire as long as that amount is greater than or equal to the minimum initial advance of $10,000.00 or the minimum subsequent advance of $500.00 . From time to time, we may offer other means by which you can obtain Advances. You may use Advances only for personal, family or household purposes other than for the purchase of real property, unless you obtain written permission from us. You may obtain Advances for 10 years after you open your Plan ("Advance Period"). At our option we may renew or extend the Advance Period. After the Advance Period ends, your principal balance will be fixed and you will be required to repay it and any interest and other charges that accrue over a period not to exceed 5 years ("Repayment Period").

We also may charge Advances to your Plan to pay for other charges and expenses described in this Agreement and in the Security Instrument, or you may pay these charges and expenses in cash. However, we are not obligated to make the Advances for charges and expenses referred to in this paragraph.

**CREDIT LIMIT.** We have assigned a Credit Limit of $53,600.00 on your Plan. You may not request an Advance that would cause your unpaid balance to exceed your Credit Limit. We are not required to honor any request for an Advance that would exceed your Credit Limit. If we do make the Advance, it does not mean your Credit Limit has been raised. We may require you to repay the amount over your Credit Limit at once.

**MAKING PAYMENTS.** If your plan has a balance or if transactions have been posted to your plan, we will send you a monthly statement describing your Plan activity and your minimum monthly payment. You may repay all or part of the new balance shown on your monthly statement at any time without penalty. You must pay at least the minimum monthly payment by the due date shown on the monthly statement.

**MINIMUM PAYMENT.** Your minimum monthly payment may change when you obtain a new Advance or when the Annual Percentage Rate changes. The minimum monthly payment is calculated to repay your outstanding balance over a 60-month payoff period. The initial 60-month payoff period begins when you take your first Advance. Whenever you obtain an additional Advance, a new 60-month payoff period will begin. When your minimum monthly payment changes, it will be calculated as the amount required to payoff your current balance in equal monthly installments at the then current Annual Percentage Rate by the end of the payoff period. However, your payment will never be less than the smaller of $100.00 or the full amount you owe.

**FINANCE CHARGES.** Periodic **FINANCE CHARGES** begin to accrue on the day an Advance is charged to your Plan and continue until the Advance is paid in full. Periodic **FINANCE CHARGES** on your Plan will be determined by applying a daily periodic rate to the daily balance (as described below) of your Plan, an amount that will include current transactions. To calculate the daily balance, we take the beginning principal balance of your Plan each day, add any new Advances and subtract any payments or credits applied to this principal balance. This gives us the daily balance against which we multiply your daily periodic rate in effect that day to calculate the daily interest. Then we add up all the daily interest accrued for the number of days in the Monthly Statement Period, which becomes the total periodic **FINANCE CHARGE** for the Monthly Statement Period.

Initials: _AV_ _HP57_

368p1 11/15/06 slivml

**EXHIBIT "C"**
U.S. Bankruptcy Court - Hawaii  #10-02408  Dkt # 15  Filed 10/18/10  Page 24 of 43

The daily periodic rate (and corresponding **ANNUAL PERCENTAGE RATE** ) are variable rates and therefore may increase or decrease annually on the anniversary of your first payment date. Changes in the daily periodic rate and **ANNUAL PERCENTAGE RATE** are based on an index, which is the monthly average of the Six Month Treasury Bill Rate as published in the Wall Street Journal. We will use the most recent index value available to us as of 30 days before the anniversary of your first payment date. An increase in the **ANNUAL PERCENTAGE RATE** and the daily periodic rate will result in a higher **FINANCE CHARGE** and higher minimum payments, while a decrease in those rates will result in a lower **FINANCE CHARGE** and lower minimum payments, assuming the same principal balance and number of days in the Monthly Statement Period. The **ANNUAL PERCENTAGE RATE** includes interest and no other costs.

The daily periodic rate is determined by adding a Margin to the applicable index, rounding up to the next one-quarter of one percentage point (0.250%) and dividing the result by 365. The Margin for your Plan is 1.500 percentage points. We determine the **ANNUAL PERCENTAGE RATE** by multiplying the daily periodic rate by 365. The **ANNUAL PERCENTAGE RATE** may not increase or decrease by more than 2.000% point(s) annually. The **ANNUAL PERCENTAGE RATE** may not be more than 12.500% or less than 6.500%.

On the date your Plan is opened the daily periodic rate is 0.0178% and the corresponding **ANNUAL PERCENTAGE RATE** is 6.500%. This initial rate will be in effect for 12 months.

**APPLICATION OF PAYMENTS.** We may apply all payments and credits in accordance with our standard operating procedures and with the requirements of applicable law. Your payments may be applied first to interest, late fees, and other fees before principal.

**CLOSING COSTS.** You may be required to pay certain closing costs. These costs are set forth below and must be paid at closing.

**OTHER CHARGES.** The following other charges will be added to your Plan as Advances as described below.

Late Charges: If you do not make a full payment within 30 days after the date it is due, a late fee of 5.000% of the scheduled payment may be charged.

Minimum Advance Amount Fee: We will charge your Plan $0.00 if you request an advance for less than the minimum advance amount permitted under this Agreement.

Non-Sufficient Funds Charge: We will charge your Plan $0.00 if you make a payment on your Plan with an instrument that is returned unpaid for any reason.

Over the Credit Limit Fee: We will charge your Plan $0.00 if you request an Advance when you have exceeded your credit limit or if the requested Advance would cause you to exceed your credit limit.

**SUBSEQUENT APPRAISALS.** At any time as we may reasonably require, while you have the right to take Advances on your Plan, we may obtain an appraisal on the Property. You agree that you will cooperate with us in obtaining such an appraisal. The cost of this appraisal will be borne by us.

**PRE-PAYMENT PENALTY CLAUSE:** If the line of credit is closed within three (3) years, the penalty is the total of the closing costs paid by CU Hawaii Federal Credit Union.

Initials: [handwritten initials]

368p2 06/25/04 stlv

U.S. Bankruptcy Court - Hawaii #10-02408 Dkt # 15 Filed 10/18/10 Page 25 of 43

**RELEASE.** When we discharge or release the Security Instrument or any other documents recorded or filed to perfect our security interest in the Property, you shall pay any recordation or filing costs. Recordation or filing costs are estimated to be $90.00.

**CERTAIN ADDITIONAL RIGHTS.** In addition to the rights explained elsewhere in this Agreement and in the Security Instrument, we also have the following rights:

A) We can terminate your Plan, require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if:

   1) You engage in fraud or material misrepresentation in connection with your Plan.

   2) We do not receive the full amount of any minimum payment due in any Monthly Statement Period within 60 days of its payment due date, or you fail to meet any of the repayment terms of this Agreement or as set forth in the Security Instrument.

   3) Your action or inaction adversely affects the Property or our rights in it. Examples of these actions or inactions include but are not limited to circumstances in which:

      a) You are the sole borrower on this Plan and you die.

      b) The Property is used for an illegal purpose.

      c) You transfer or attempt to transfer all or part of your interest in the Property without our written consent.

      d) All or part of the Property is taken by condemnation or eminent domain.

      e) You are in default on any mortgage or lien on the Property.

      f) You fail to keep the Property properly insured.

      g) You fail to keep the Property properly maintained and in good repair.

      h) You fail to pay real property taxes and assessments on the Property when they are due.

B) We can refuse to make additional Advances or reduce your Credit Limit if:

   1) The value of the Property declines significantly below its appraised value for purposes of this Plan.

   2) We reasonably believe you will not be able to meet the repayment requirements set forth in this Agreement due to a material change in your financial circumstances.

   3) You are in default of a material obligation in this Agreement or in the Security Instrument. All of your obligations described in this Agreement and in the Security Instrument are material for purposes of this paragraph.

   4) Government action prevents us from imposing the **ANNUAL PERCENTAGE RATE** provided for in this Agreement.

   5) Government action impairs our security interest such that the value of our interest is less than 120 percent of your Credit Limit.

   6) A regulatory agency which supervises us has notified us that continued Advances would constitute an unsafe and unsound practice.

Initials: [signature]

368p3 06/25/04 stlv

U.S. Bankruptcy Court - Hawaii  #10-02408  Dkt # 15  Filed 10/18/10  Page 26 of 43

7)  You become the subject of a proceeding in bankruptcy.

8)  There is more than one borrower on this Plan, one of you dies, and that adversely affects our interest in the Property.

9)  The maximum **ANNUAL PERCENTAGE RATE** (or rate cap) is reached.

If we refuse to make additional Advances or reduce your Credit Limit under this subsection B, we will send you a written notice stating the reason for such action. If for any reason you believe your Credit Limit should be reinstated, you must send us a written request for reinstatement and include in the request the reasons why you believe the Credit Limit should be reinstated.

**LEGAL FEES.** If we refer your Plan to an attorney for collection or foreclosure of the Security Instrument or if you file for bankruptcy or if a bankruptcy petition is filed against you, you agree to pay our reasonable attorney's fees as permitted by applicable law plus court costs and the costs related to foreclosure.

**ASSUMPTION.** Someone buying your Property may not assume this loan on these terms.

**RULES REGARDING CHECKS.** You may not use Home Equity Line of Credit Checks to make payments on your Plan. You agree that the Checks we supply you with are our property and that you will return them to us at our request.

We are not responsible if anyone refuses to honor a Check. We may honor postdated Checks and are not responsible if we do so. We are not required to certify Checks.

You agree to notify us promptly if any of your Checks are lost or stolen. You also agree to cooperate with us or any law enforcement agency in any effort to investigate the circumstances surrounding the incident and efforts to minimize potential losses to you or us stemming from it.

You may ask us in writing to "stop payment" on a Check. If you do, you must tell us the name of the payee, the amount, date and number of the Check, and who signed it. You also will be required to pay a fee of $0.00 for       each request to "stop payment" on a Check. We are not bound by a stop payment order unless we have a reasonable opportunity to act on it and will not be liable for failing to stop payment if we used ordinary care. You agree to indemnify us and will pay all costs and expenses we incur (including reasonable attorney's fees) as a result of honoring your stop payment order. This indemnity will survive any termination of this Agreement.

**SENDING OF NOTICES.** Any statement or notice to you under this Agreement will be sufficiently given if sent to your address on file in connection with the Plan or to a new address of which you have notified us in writing at least 20 days before the sending of the statement or notice.

**AMENDMENT.** We may change the terms of this Agreement in accordance with the requirements of applicable law.

**IRREGULAR PAYMENTS.** We may accept late payments, partial payments, or items marked "payment in full" or the like without losing any of our rights under this Agreement.

**DELAY IN ENFORCEMENT.** We may delay enforcing our rights under this Agreement without losing them.

**LEGAL PURPOSES.** You may not use any Advances for purposes that violate any applicable federal, state or local laws or regulations.

**APPLICABLE LAW.** Except to the extent that federal law shall be controlling, your rights, our rights, and the terms of this Agreement shall be governed by Hawaii law.

**JOINT ACCOUNT.** On a joint account each of you may use the Plan, but the total unpaid balance may not exceed the Credit Limit. Each of you is individually responsible for payment of the entire balance regardless of who actually requested the Advance. Each of you has the right, upon reasonable written notice to us, to have the Credit Limit reduced or to suspend the privilege of obtaining new Advances. A request to suspend the privilege of obtaining Advances, even if made only by one of you, will be effective against all of you who are eligible to obtain Advances under this Agreement. In order to restore the Plan, we may require financial information from all of you and may refuse to restore the Plan if you no longer qualify under the criteria then in effect for new Plans. Any request for reinstatement would have to be made in writing by all of you, despite the fact that only one of you may have requested the suspension of Advances.

Initials: _____

368p4 06/25/04 sltv

U.S. Bankruptcy Court - Hawaii  #10-02408  Dkt # 15  Filed 10/18/10  Page 27 of 43

**REVIEW OF YOUR PLAN.** Upon our request, you will provide us with current financial and credit information and will sign any additional or corrective documents in connection with this Agreement.

**TAX CONSEQUENCES.** You acknowledge that we have given you no assurances that the interest paid on your Plan is tax deductible. You are urged to consult your own tax advisor concerning the deductibility of interest and other costs charged in connection with this Plan. The Internal Revenue Service requires you to furnish to us, the interest recipient, your taxpayer identification number ("TIN") in order to verify any deduction for mortgage interest. Your failure to provide us with your TIN may subject you to a $50 penalty imposed by the Internal Revenue Service.

**MEMBERSHIP IN CREDIT UNION.** You must maintain your membership in the credit union in order to obtain Advances.

**DUE ON SALE.** Except as otherwise provided by federal law, if all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by the Security Instrument.

**YOUR BILLING RIGHTS - Keep this Notice For Future Use.** This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

<u>Notify Us In Case of Errors or Questions About Your Bill.</u> If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at the address listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.

If you need more information, describe the item you are not sure about.

Initials ___ _HPPSr

368p5  06/25/04 silv

U.S. Bankruptcy Court - Hawaii  #10-02408  Dkt # 15  Filed 10/18/10  Page 28 of 43

<u>Your Rights and Our Responsibilities After We Receive Your Written Notice.</u> We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to send statements to you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to the mistaken amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question on your statement. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

---

You agree to the terms and conditions contained in this Agreement and you acknowledge receipt of a completed copy of this Agreement.

_Saline Jane_ _____ 12-6-06          _Saline Jane_ _____ 12-6-06
Witness                            Date       Witness                            Date

### ACCEPTED AND AGREED TO:

_Hazel Ann Pinnow_ ___ 12/6/06          _Harold D Pinnow_ _____ 12-06-06
Borrower:    Hazel Ann Pinnow     Date       Borrower:    Harold Douglas Pinnow, Sr.    Date

388p6 06/25/04 sllv

U.S. Bankruptcy Court - Hawaii  #10-02408   Dkt # 15   Filed 10/18/10   Page 29 of 43



**CU Hawaii**
FEDERAL CREDIT UNION

### EARLY DISCLOSURE
### IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT

This disclosure contains important information about our Home Equity Line of Credit. You should read it carefully and keep a copy for your records.

**Availability of Terms:** The terms described below are subject to change at any time. If these terms change (other than the annual percentage rate) and you decide, as a result, not to enter into an agreement with us, you are entitled to a refund of any fees that you have paid to us or anyone else in connection with your application.

**Security Interest:** We will take a mortgage, deed of trust or other security interest on your home. You could lose your home if you do not meet the obligations in your agreement with us.

**Possible Actions:** We can terminate your line, require you to pay us the entire outstanding balance in one payment, and charge you certain fees if:

- You engage in fraud or material misrepresentation in connection with the line.

- You do not meet the repayment terms.

- Your action or inaction adversely affects the collateral or our rights in the collateral.

We can refuse to make additional extensions of credit or reduce your credit line if:

- The value of the dwelling securing the line declines significantly below its appraised value for purposes of the line.

- We reasonably believe you will not be able to meet the repayment requirements due to a material change in your financial circumstances.

- You are in default of a material obligation in the agreement.

- Government action prevents us from imposing the annual percentage rate provided for or impairs our security interest such that the value of the security interest is less than 120 percent of the credit line.

- A regulatory agency has notified us that continued advances would constitute an unsafe and unsound practice.

- The maximum annual percentage rate is reached.

The initial agreement permits us to make certain changes to the terms of the agreement at specified times or upon the occurrence of specified events.

**Minimum Payment Requirements:** You can obtain advances of credit for 120 months   (the "Advance Period"). At our option, we may renew or extend the Advance Period. After the Advance Period ends, the Repayment Period will begin. The length of the Repayment Period may be determined by your outstanding balance at the time you take your last advance during the Advance Period. After the Advance Period ends, you will no longer be able to obtain credit advances. You will be required to make monthly payments during both the Advance Period and the Repayment Period.

HC#31302                               Page 1 of 3

307p1 12/02/03 drflv

U.S. Bankruptcy Court - Hawaii  #10-02408   Dkt # 15   Filed  10/18/10   Page 30 of 43

Your minimum monthly payment may change when you obtain a new Advance and when the Annual Percentage Rate changes. The minimum monthly payment is calculated to repay your outstanding balance over a 60-month payoff period. The initial 60-month payoff period begins when you take your first Advance. Whenever you obtain an additional Advance, a new 60-month payoff period will begin. When your minimum monthly payment changes, it will be calculated as the amount required to payoff your current balance in equal monthly installments at the then current Annual Percentage Rate by the end of the payoff period. Your monthly payment will never be less than the lesser of $100.00 or the full amount you owe. Your minimum payment will include any amounts past due, any amount by which you have exceeded your credit limit, and all other charges.

**Minimum Payment Example:** If your minimum payment was $200.38 and you made only the minimum monthly payments and took no other credit advances, it would take 60 months to pay off a credit advance of $10,000 at an **ANNUAL PERCENTAGE RATE** of 7.5%. During that period, you would make 60 monthly payments of $200.38.

**Third Party Fees:** You must pay certain fees to third parties to open the Plan. These fees generally total between $800.00 and $1,200.00. If you ask, we will give you an itemization of the fees you will have to pay to third parties. In addition, you must carry insurance (hazard and flood insurance, as applicable) on the property that secures the line of credit.

**Minimum Draw Requirements:** The minimum credit advance you can receive is $10,000.00 for the first advance and $500.00 for each subsequent advance.

**Tax Deductibility:** You should consult a tax advisor regarding the deductibility of interest and charges for the Plan.

**Variable-Rate Information:** The Plan has a variable rate feature, and the annual percentage rate (corresponding to the periodic rate) and the minimum payment can change as a result. The annual percentage rate includes only interest and not other costs.

The annual percentage rate will be based on the value of an index. The index is the monthly average of the Six Month Treasury Bill Rate as published in the Wall Street Journal. Information about the index is published in the Wall Street Journal and is also available from the Treasury Department website: www.federalreserve.gov/releases/h15/Update or www.publicdebt.treas.gov. We will use the most recent index value available to us as of 30 days before the anniversary of your first payment date. To determine the annual percentage rate that will apply to your line, we add a margin to the value of the index, and round the rate up to the next one-quarter of one percentage point (0.250%). The current margin for your Plan is 1.500%.

Ask us for the current index value and annual percentage rate. After you open the Plan, rate information will be provided on periodic statements that we will send you.

**Rate Changes:** The annual percentage rate can change annually on the anniversary of your first payment date. The rate will not increase more than 2.000 percentage point(s) at each adjustment. The maximum **ANNUAL PERCENTAGE RATE** that can apply is 12.500% or the maximum rate permitted by law, whichever is less. Under no circumstances will your **ANNUAL PERCENTAGE RATE** go below 6.500%.

**Pre-Payment Penalty Clause:** If the line of credit is closed within three (3) years, the penalty is the total of the closing costs paid by CU Hawaii Federal Credit Union.

U.S. Bankruptcy Court - Hawaii #10-02408 Dkt # 15 Filed 10/18/10 Page 31 of 43

**Maximum Rate and Payment Examples:** If you had an outstanding balance of $10,000, the minimum monthly payment at the maximum **ANNUAL PERCENTAGE RATE** of 12.500% would be $224.98. This annual percentage rate could be reached at the time of the 36th payment.

**Historical Example:** The following table shows how the annual percentage rate and the minimum monthly payments for a single $10,000 credit advance would have changed based on changes in the index over the past 15 years. The index values are from the first week ending in January of each year. While only one payment amount per year is shown, payments may have varied during each year. The table assumes that no additional credit advances were taken, that only the minimum payments were made each month, and that the rate remained constant during each year. The table does not necessarily indicate how the index or your payments will change in the future.

| 6 Month T-Bill | | | | | | |
|---|---|---|---|---|---|---|
| Year | Index Value | Margin | Index + Margin | ANNUAL PERCENTAGE RATE | Minimum Monthly Payment | Loan Balance |
| 1987 | 5.890% | 3.750% | 9.640% | 9.750% | $105.97 | $9,709.04 |
| 1988 | 6.580% | 3.750% | 10.330% | 10.500% | $110.57 | $9,406.66 |
| 1989 | 8.900% | 3.750% | 12.650% | 12.500% | $122.28 | $9,121.42 |
| 1990 | 7.900% | 3.750% | 11.650% | 11.750% | $118.44 | $8,773.78 |
| 1991 | 6.750% | 3.750% | 10.500% | 10.500% | $112.37 | $8,343.54 |
| 1992 | 4.010% | 3.750% | 7.760% | 8.500% | $103.47 | $7,803.59 |
| 1993 | 3.430% | 3.750% | 7.180% | 7.250% | $100.00** | $7,158.65 |
| 1994 | 3.340% | 3.750% | 7.090% | 7.250% | $100.00** | $6,484.40 |
| 1995 | 6.610% | 3.750% | 10.360% | 9.250% | $104.84 | $5,786.98 |
| 1996 | 5.230% | 3.750% | 8.980% | 9.000% | $104.33 | $5,034.73 |
| 1997 | 5.330% | 3.750% | 9.080% | 9.250% | $105.12 | $4,213.04 |
| 1998 | 5.460% | 3.750% | 9.210% | 9.250% | $105.34 | $3,307.69 |
| 1999 | 4.620% | 3.750% | 8.370% | 8.500% | $104.42 | $2,301.89 |
| 2000 | 5.730% | 3.750% | 9.480% | 9.500% | $105.70 | $1,208.70 |
| 2001 | 5.300% | 3.750% | 9.050% | 9.250% | $105.83 | $1.41 |

*   This is a margin we have used recently;  your margin may be different.  A higher margin is                    generally used for our
     non-owner occupant Plan.
**  This payment reflects the minimum monthly payment of $100.00.

By signing below, you hereby acknowledge receipt of this "Important Terms of Our Home Equity Line of Credit" disclosure and a copy of the Home Equity Brochure, "When Your Home is on the Line," on the date indicated next to your signature.

_Hazel Ann Pinnow_ _____ (Seal)          _Harold Douglas Pinnow_ _____ (Seal)
Borrower:      Hazel Ann Pinnow                     Borrower:   Harold Douglas Pinnow, Sr.

U.S. Bankruptcy Court - Hawaii  #10-02408   Dkt # 15   Filed  10/18/10   Page 32 of 43




L-22       **STATE OF HAWAII**
**OFFICE OF ASSISTANT REGISTRAR**
**RECORDED**
DEC 12, 2006       08:01 AM

Doc No(s) 3525707
on Cert(s) 761,584

**/s/ CARL T. WATANABE**
**ASSISTANT REGISTRAR**

20    1/1    Z5

---

After recordation, return by mail ☐       or pickup ☐
CU Hawaii Federal Credit Union
476 Hinano Street
Hilo, HI 96720

Document contains _____ pages.

TG: 2006 61444 - R

TGE: 2622 21629       L/C

JENNIFER S. NHAM
(9) pages

**TITLE OF DOCUMENT:**

### MORTGAGE

**PARTIES TO DOCUMENT:**

**MORTGAGOR:**     Hazel Ann Pinnow and Harold Douglas Pinnow, Sr., WIFE
AND HUSBAND, as Tenants by the Entirety

**MORTGAGEE:**     CU Hawaii Federal Credit Union

**TAX MAP KEY(S):**     3/1-1-007-121

Initials

**EXHIBIT "D"**

U.S. Bankruptcy Court - Hawaii   #10-02400   Dkt # 15   Filed 10/18/10   Page 33 of 43

# HAWAII
# HOME EQUITY LINE OF CREDIT MORTGAGE
## (Securing Future Advances)

THIS MORTGAGE is made on December 06, 2006. The mortgagor is Hazel Ann Pinnow and Harold Douglas Pinnow, Sr., WIFE AND HUSBAND, as Tenants by the Entirety. This Mortgage is given to CU Hawaii Federal Credit Union, a Federal Credit Union, whose address is 476 Hinano Street, Hilo, HI 96720 ("Lender"). In this Mortgage, the terms "you," "your" and "yours" refer to the mortgagor(s). The terms "we," "us" and "our" refer to the Lender.

Pursuant to a Home Equity Line of Credit Agreement dated December 06, 2006, the same date as this Mortgage ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of Fifty Three Thousand Six Hundred and 00/100 Dollars (U.S. $53,600.00). You agree that this Mortgage shall continue to secure all sums now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to us and our successors and assigns the following described property located in County of Hawaii, Hawaii: which has the address of Lot 133, First Street, Volcano
Hawaii, 96785 ("Property Address");

See attached exhibit A

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

YOU COVENANT that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initial: HDP HDPSr

U.S. Bankruptcy Court - Hawaii  #10-02408   Dkt # 15   Filed 10/18/10   Page 34 of 43

**YOU AND WE** covenant and agree as follows:

    **1.**    **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

    **2.**    **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

    **3.**    **Prior Mortgages; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

    **4.**    **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. You shall also keep the Property insured against windstorm and hurricane hazards by obtaining a policy therefor from the Hawaii Hurricane Relief Fund or from any public or private insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

We may also, at our option and on your behalf, adjust and compromise any claims under the insurance, give releases or acquittances to the insurance company in connection with the settlement of any claim and collect and receive insurance proceeds. You appoint us as your attorney-in-fact to do all of the foregoing, which appointment you understand and agree is irrevocable, coupled with an interest with full power of substitution and shall not be affected by your subsequent disability or incompetence.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

Initials: _HH_ _H03/12_

f306p3 12/18/03 sliv

U.S. Bankruptcy Court - Hawaii  #10-02408   Dkt # 15   Filed  10/18/10   Page 35 of 43

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

5. **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

6. **Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Mortgage, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

7. **Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

8. **Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

Initials: _____

U.S. Bankruptcy Court - Hawaii  #10-02408   Dkt # 15   Filed 10/18/10   Page 36 of 43

9.    **You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

10.    **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement:  (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

11.    **Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

12.    **Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

13.    **Governing Law; Severability.** The interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

14.    **Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

15.    **Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

Initials: HP  HDPs.

U.S. Bankruptcy Court - Hawaii  #10-02408   Dkt # 15   Filed 10/18/10   Page 37 of 43

16. **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Mortgage, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Mortgage, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

17. **Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under paragraph 14 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses incurred in pursuing the remedies provided in this section 17, including, but not limited to reasonable attorneys' fees and costs of title evidence, as permitted by applicable law.

18. **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

19. **Release.** Upon your request and payment of all sums secured by this Mortgage, we shall release this Mortgage. You will be responsible for all costs of recording such release.

20. **Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

Initials: 

U.S. Bankruptcy Court - Hawaii  #10-02408  Dkt # 15  Filed 10/18/10  Page 38 of 43

21. **Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the note secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

22. **Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.

☐ Condominium Rider              ☐ 1-4 Family Rider
☐ Planned Unit Development Rider   ☐ Other(s)

BY SIGNING BELOW, You accept and agree to the terms and covenants contained in this Mortgage and in any rider(s) executed by you and recorded with it.

_Hazel Ann Pinnow_  12/6/06  (Seal)      _Harold Doug Pinnow_  12-06-06  (Seal)
Borrower:    Hazel Ann Pinnow    Date      Borrower:    Harold Douglas Pinnow, Sr.    Date

U.S. Bankruptcy Court - Hawaii  #10-02408  Dkt # 15  Filed 10/18/10  Page 39 of 43

# ACKNOWLEDGMENT

STATE OF HAWAII        )
                                 )  **ss.**

COUNTY OF HAWAII     )

On <u>December 06, 2006</u>, before me personally appeared Hazel Ann Pinnow & Harold Douglas Pinnow, Sr., to me personally known, who, being by me duly sworn or affirmed, did say that such person(s) executed the foregoing instrument as the free act and deed of such person, and if applicable in the capacities shown, having been duly authorized to execute such instrument in such capacities.



*Valerie Lane*
Print or type name: Valerie Lane
Notary Public, State of Hawaii

My commission expires: <u>October 02, 2009</u>

Clerk:      **Please return to:**

           CU Hawaii Federal Credit Union
           476 Hinano Street
           Hilo, HI 96720

U.S. Bankruptcy Court - Hawaii   #10-02408   Dkt # 15   Filed 10/18/10   Page 40 of 43

TMK: (3) 1-1-007-121

## EXHIBIT "A"

All of that certain parcel of land situate at Keaau, District of Puna, Island and County of Hawaii, State of Hawaii, described as follows:

LOT 133, area 20,000 square feet, more or less, as shown on Map 12, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1053 (amended) of W.H. Shipman, Limited.

Together with a right-of-way across Lot 8873, for road and utility purposes in common with others entitled thereto as shown on Map 12 of said Application;

Being land(s) described in Transfer Certificate of Title No. 761,584 issued to HAROLD DOUGLAS PINNOW, SR. and HAZEL ANN PINNOW, husband and wife, as Tenants by the Entirety.

BEING THE PREMISES ACQUIRED BY WARRANTY DEED

GRANTOR    :   HAZEL ANN PINNOW, wife of Harold Douglas Pinnow, Sr.

GRANTEE    :   HAROLD DOUGLAS PINNOW, SR. and HAZEL ANN PINNOW, husband and wife, as Tenants by the Entirety

DATED      :   July 19, 2005
FILED      :   Land Court Document No. 3303471

Subject to any and all liens and/or encumbrances of record.

9

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF HAWAII
## HONOLULU DIVISION

IN RE: **Harold Douglas Pinnow, Sr.**
**Hazel Ann Pinnow**

CASE NO

CHAPTER   **7**

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

PART A – Debts secured by property of the estate.  (Part A must be fully completed for EACH debt which is secured by property of the estate  Attach additional pages if necessary.)

| Property No.   1 | |
|---|---|
| **Creditor's Name:** <br> CU Hawaii Federal Credit Union <br> 476 Hinano Street <br> Hilo, HI 96720 <br> xxxxx0-171 | **Describe Property Securing Debt:** <br> Single Family Residence |

Property will be (check one):
☑ Surrendered      ☐ Retained

If retaining the property, I intend to (check at least one):
☐ Redeem the property
☐ Reaffirm the debt
☐ Other.  Explain (for example, avoid lien using 11 U.S.C. § 522(f)):

Property is (check one):
☐ Claimed as exempt      ☑ Not claimed as exempt

| Property No.   2 | |
|---|---|
| **Creditor's Name:** <br> CU Hawaii Federal Credit Union <br> 476 Hinano Street <br> Hilo, HI 96720 <br> xx3990 | **Describe Property Securing Debt:** <br> Single Family Residence |

Property will be (check one):
☑ Surrendered      ☐ Retained

If retaining the property, I intend to (check at least one):
☐ Redeem the property
☐ Reaffirm the debt
☐ Other.  Explain (for example, avoid lien using 11 U.S.C. § 522(f)):

Property is (check one):
☐ Claimed as exempt      ☑ Not claimed as exempt

B 8 (Official Form 8) (12/08)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF HAWAII
### HONOLULU DIVISION

IN RE:  Harold Douglas Pinnow, Sr.
        Hazel Ann Pinnow

CASE NO

CHAPTER  7

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION
### Continuation Sheet No. 1

| Property No.  3 | |
|---|---|
| **Creditor's Name:**<br>Hawaii County Employees FCU<br>131 Puu Honu Way<br>Hilo, HI 96720<br>x0302 | **Describe Property Securing Debt:**<br>2002 Honda Civic |

Property will be (check one):
- ☐ Surrendered    ☑ Retained

If retaining the property, I intend to (check at least one):
- ☐ Redeem the property
- ☑ Reaffirm the debt
- ☐ Other.  Explain (for example, avoid lien using 11 U.S.C. § 522(f)):

Property is (check one):
- ☑ Claimed as exempt    ☐ Not claimed as exempt

PART B — Personal property subject to unexpired leases.  (All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)

| Property No.   1 | | |
|---|---|---|
| **Lessor's Name:**<br>None | **Describe Leased Property:** | **Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):**<br><br>YES ☐        NO ☐ |

I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.

Date  08/05/2010

Signature _Harold Douglas Pinnow, Sr._

Date  08/05/2010

Signature _Hazel Ann Pinnow_